Before you begin, I just want to acknowledge and thank publicly the Chief of the Straw of the Show of the Federal Circuit who is here with us today and tomorrow. I had the privilege of sitting once before, and that was many years ago, quite a while ago, but it's a pleasure to get a chance to work with the Chief of the Show and I'm looking forward to his being able to help us out with some of these cases. With that, I've sat with Paul recently, I think it was last year, and I'm looking forward to many, many more times to come. I'll be here. Thank you. Good morning, Your Honor. Good morning. Please be seated. My name is Jeffrey Gordon. I represent the town of Howard Graden. I'm going to take two minutes for my rebuttal. Okay? I'm going to give you five minutes of our time to Ms. Goldberg from the Department of Labor. The questions before the court today are straightforward. First. Okay. Whoa. I don't know how long. I got up early this morning again and tried to look at it. And the facts are straightforward. The issue is straightforward. I'll be down if I can figure out an answer that makes any sense. Well, maybe I can. What you can maybe do is explain Russell and Merton and Summers and Great West. Let me start with it. Do you care to address statutory standing at all? Just the nature of statutory standing. Mr. Graden actually has it. I realize there's cases against you, but what you're saying is you are a participant. So you don't have to worry about anything else. You are a participant now as far as you are concerned under the statute. But when does standing exist? Does it exist at the time of the breach, the time the suit is brought, or must it exist at all times throughout the litigation? Standing is a matter of subject matter. It needs to exist at all times. And our position is that it does exist in this circumstance. The term participant is a term borrowed in the statute, so it's not a participant for this purpose, a participant for all purposes. It's going to depend on facts before you, the type of plan at issue, particularly. Wait, another one. I want to go back to that. Please, you're right. Your client is a participant. When, if ever, does he stop being a participant? He stops being a participant. Well, as it goes to the nature, it's not one answer fits all. In this case, I'll just fax this case. In a defined contribution plan, he remains a participant so long as he has a tolerable claim to vested benefit. But that's a restating the statute and restating the borrowed sum. In terms of the facts of this case, as you said, when does Mr. Grady, having taken a lump sum withdrawal from his plan, when does he stop being a participant? Does he ever stop being a participant? He does. Once he gets his full value of his benefits due. That puts a rabbit in the hat, because we're not sure that he's a participant pertaining to argue that he can get the full value of his benefits due. But he's been paid out of the plan. You're claiming he's not a participant. You're claiming he is a participant. And if you're right, it seems to me that he remains a participant until he dies. And arguably after that, his survivor remains a participant, even though all of his money may have been paid out 50, 60 years before the claim was brought. That's my problem. When does he stop being a participant? Well, I understand that. And like I said, it's not a one-size-fits-all proposition. I just want one answer. There's one answer. Obviously, it's not that simple. I think it's simple. For instance, this is a defined contribution plan. If this were a defined benefits plan, that means that the participant, once he receives his benefits in a defined benefits plan, he no longer has a claim to any plan asset. Let me try that one more time. I'll reword it. When does a person who at one time clearly was an employee by which he became a member or transferred to become a participant, a defined contribution plan, then takes a total lump sum withdrawal from that defined contribution plan? When does such a hypothetical person stop being a participant in the defined contribution plan? Well, I guess two events could make that happen. One would be the statute of limitations expires. Well, that doesn't mean he's no longer a participant. That means he can't bring a claim anymore. Second, well, it's a standing issue, for one. As we talk about this issue, it's a standing issue. If he hasn't been paid his full benefit due him, he has a colorable claim, so therefore he is a participant. So until the day he dies, he could argue, and then after that his survivor could argue, that he was not paid the full amount of benefits due him, and that he would remain a participant until the day he died, and after he died his survivor is a participant for as long as she survives. That's what he said. Setting aside a statute of limitations. Right, right. Because, like I said, so long as we claim, so long as there's benefits owed, he would be a participant. He hasn't fully removed himself from the plan so long as he still owes the benefits. Suppose I'm a plan administrator, and I'm trying to figure out to whom do I owe obligations, including reports. From what you say, it seems to be everybody who ever was an active member of a plan, unless they concede that they have been fully paid, which they could never do because they might later discover some new fraud on the part of the fiduciary, in which case, under your logic, nobody ever ceases to be an active member of the plan. And that just seems like that can't be right. That's like the mob. You can get in, you never can get out. When I pretend to be trying to get out, they pull you back in. Well, it's not, that's just not the case. Because, like I said, it's not participant for one purpose. No, but I'll take your case. If standing is allowed here, and if your client prevails, he still wouldn't be no longer a member because if he learns of some other fraud later, he'll bring another suit and he'll claim again that he has standing because he'll say, I still haven't been paid all the benefits to which I'm owed. So there's no end to it, even for your client, even if he prevails in the current lawsuit. Under your logic. Well, that's true. But also, the client's not going to owe him an obligation to be sending him notices. Why not? If he's a participant, why wouldn't they have an obligation? Because it's the term, the definition of participant. Because it's really a good answer to your question. That wasn't my full answer. A participant for this purpose is not necessarily a participant for notice requirements or procedure requirements under the Act. And where in the Act or the regs does it make a distinction in terms of notice requirements, procedure requirements, disclosure requirements, between different categories of participants? Those participants who at one point in time were paid, what appeared at the time to be a full sum of the fraud from the contamination plan versus those that have not yet been paid, what appeared to be at the time. Where in the plan in the regs is that distinction made? Well, I think it's more appropriate for someone from the Department of Labor, and I believe they can speak to that precisely. But the statute itself does not address anything about former participants. It says former employees. Because Congress can envision a circumstance where a participant, does someone have assets in the plan or they don't have assets in the plan? It doesn't change the fact that they're a former employee. Whether they can have a claim to additional benefits depends on what type of plan they're in. In defined benefits, there's the Supreme Court stated in Hughes. The Hughes case, there's a critical distinction between these two types of cases. First, there is a defined benefit plan. Well, we understand the difference in the two types of plans, but that only helps to end standing immediately for one of the two categories. Your client is in the other category. We're trying to figure out how his standing and membership ever ends, and I still don't hear an answer. What is the rule of reason that says that your client is covered, but there is an end to standing that doesn't exist forever, or until he dies, or his beneficiary dies? How would you write this opinion? You haven't even told us. I mean, that's what we're asking you. The issue before us is expanding. How would you write the opinion? I understand. There's no difference between a former employee who still has an asset in the plan in perpetuity, or as opposed to a former employee who took his assets out of the plan, albeit that they were deficient due to fiduciary breaches. There's no practical difference. There's nothing in the statute that draws a distinction. There's nothing in the case that draws a distinction, except for this case Hargrave. All of these cases all rely on the same flawed reasoning after Hargrave. You're not answering the question. How would you write an opinion that says there's a reasonable way to say there's an end to being a participant, albeit your client is still covered? Their participation ends when they get the value of their benefits. And that makes sense. That was his value according to whom? Because your friends are going to say, wait a minute. Your client, he did the value. It was paid out of a loan sum at the time he was true. He got the value at the time. That loan sum, that was the nature of the plan. He got his value. He's no longer a participant. That's what they're arguing. Well, that's an unfair result. If we can show that his distribution unwittingly to him was less than it should have been, that's an unfair result. And that doesn't protect retirement savings. Originally, it was for the place to retire. So you are a participant for as long as you need to be to achieve a fair result? Yes. Your survivor continues to be a participant for as long as she needs to be to achieve a fair result. There are other protections in the law to draw that line as to how long someone can come before court and try to get those statutes. In law, there's statutes. There's limitation periods on everything. If I hurt my leg, yes, I'm hurt. I may have tripped on someone's lawn, but I'll always be injured. So compensation defines who is a participant? No, it defines how long this person can have a claim. But just as my analogy, if I lose a leg in an accident, I'm always going to have my leg lost. I'm never going to get my leg back. But I can only make a claim against it. I can only try and get compensation to work for a limited amount of time. Let me ask you a different question. Judge Shessler heavily depended on the notion that the relief he was seeking looked to him more like damages than vested benefits. What were your options? Could you have sued under ERISA for damages? No, we fought with him. Call it damages. I don't care what you call it. Call it damages. Could he have sued under ERISA for damages? No. It's not a lawsuit that ERISA contemplates. The answer is yes or no. Please let me respond to this because it's critical. The answer is yes, they're damages, but they are the plan's damages. The plan, no matter what assets are in the plan, they flow to the participants as benefits. So, yes, they're damages. They're just not our client's damages. They're our client's benefits. So that same scenario would never exist, for instance, in a health care system. Let me put it this way. If your client said to the court, I'm not suing for vested benefits, I'm suing on behalf of the plan for damages, under the language of the standing provision, would he have standing or not? Yes. Well, how can that be? When the statute requires it, it must be. You're arguing for constructive trust. That's not so. I mean, the Second Circuit discussed this as well. He is going to get benefits. The United States, Colin. Colin. He is going to get benefits as a result. They discussed it. Absolutely. But let's go back to this court. And Sharon Plow calls what this is benefits. It's not a standing issue, but it looks at what's going to be received. Then he would be suing, in my hypothetical, for benefits, not for damages. Indirectly, once the plan recovers, he will be entitled to benefits, or at least has a culpable claim to benefits, once the plan recovers its loss. Because the plan, the defined contribution plan, can't hold on to anything. It must give that out. What's the difference between damages and benefits? Well, the difference is electricity flows into this building, but we don't feel it. We see the light that comes down. It's just like assets come into the plan, and then they turn into something else. They turn into benefits, the plan for assistance. That sounds a little like the alchemy you use at Arista. I'm not sure how much you're aware of. That's radio-ism. That's the nature of this type of plan, that no matter what assets the plan has, it cannot hold on to them. It has to distribute, and it's a defined contribution plan. It must distribute those assets as benefits to plan participants. Sharon Plow recognizes that people stick. In fact, said it, that loss of a plan redounds as benefits under 409. Claims made under section 409, increased fiduciary duty, coming through 502A2, on behalf of the plan lost, redounds as benefits to plan participants. This isn't about the fiduciary of the plan. This is a person who at one point in time, according to you, it still is, but we don't want to be at one point in time that this was a participant in the plan, who's really bringing some of the nature of an old 10B5 action. That's really what he's arguing. This is a stock fraud, and the damages or benefits or whatever you want to define them manifest themselves because the waste, the pot of stuff that he was entitled to get some stuff out of was not as big and fresh as it should have been because of the stock fraud. That's what he's arguing. If you agree with that, then why isn't this really a situation, and maybe this is why the statute is cast as narrowly, and as it is, he's most likely to interpret it wrongly. Why isn't this a situation simply where Congress could say, if you want to bring a private securities action, you bring a private securities action, but you don't try to shoehorn it into ERISA by inflating the concept of participant and trying to get standing for a suit that is not properly brought under ERISA. What would be your response to that? It's been rejected a number of times, and it's been rejected by this court in this hearing case. The lower court, the judge actually held that. She said this is just a dressed-up securities claim, but it's not. It's a different statutory scheme. There's different defendants. There's a different pleading standard, and this is a breach of fiduciary duty. We have to show that the plaintiff participates, excuse me, the plaintiff fiduciaries did breach their duty, not that they committed the fraud. There could be many instances. It's not a binary argument about boy standing. When you say breach, and you may be right in what you're saying, but you're trying to derive something from that, and that certainly exists, when you say that you're trying to show they've breached their duty, not that they've committed a fraud. If you take the standard out of that, and I'm not sure you really can, it does seem that you're arguing that that which caused the damages slash benefits to be lost here is the, quote, fraudulent, I don't mean that in the technical term of art sense, activity of the persons who were responsible for building this trust, this race, and therefore there wasn't as much stuff in there for the lump sum as there should have been. The lump was smaller than it should have been. Well, I agree with your result, but just not how you got there. It's a fiduciary thing to check shared-share rules. Maybe these securities cases share a factual securities and a risk case and a derivative case. Maybe they all share the same factual predicate, but they're all based on a different violation. So if the CEO of a company commits fraud, and through the line, the planned fiduciaries don't take action to protect the planned participants from losing retirement savings, that's the nature of their loss. Thank you, Your Honor. I just think you're right. We need these services to be here some time for, if I'm not mistaken, a few days from Goldberg. Mr. Goldberg, come on up. Thank you. Judge Moore, that is a very simple problem. And Mr. Gnowski, Mr. Gnowski, I'm sorry. We will give you some extra time, obviously. We've got a very limited amount of red light, and we just want to give you some additional time to respond to that. I looked down at your name, and I saw it will be in the form of Robert, and that's why I said Mr. Gnowski. I apologize. May it please the Court, my name is Elizabeth Goldberg, and I represent the Secretary of Labor of Amicus Curia in support of the statement. Counsel, if we say no standing here, can Mr. Norton sue in state court on the grounds that these transactions fall outside of the governance of the ERISA Act? Well, I think that is getting far away from what we need to look at. That may be so, but I'd like you to answer the question anyway so we can figure out what his options were. He really doesn't need to do that because of the statutory language. He fits well within the framework. If we rule he lacks standing, can he sue on these facts in state court? Does he have an option elsewhere? He may, but I want us to look at the statutory language, which under 50282, a suit can be brought on behalf of the plan by a participant, which is defined in Section 37 of the statute, and I want to read you the language. Let me ask you a few things. You're saying that this person is a participant now. The first question I asked Mr. Norton was when do you look for statutory standing? I realize that's not an argument you made, but there are some cases out there, and there's an argument that it should be at the time of the breach, an argument at the time of the suit, and an argument that it should exist at all times throughout the litigation. Does the government have a position on that? Well, the government would say that ERISA's statutory standing should be signed as broadly as possible because Congress has an intent to protect pensioners, and this court has, in fact, recognized that. Have you taken a position, because you didn't argue that here, have you taken a position in any other court with regard to that issue of statutory standing? I can't think of any case off the top of my head. I mean, certainly we would say if he had standing at the breach and he continues to have a claim for that benefit, then he would certainly have standing. And, again, that brings us back to the breach. What you're saying is no matter what, he's a participant. But if, for example, if somebody ceased to be a participant in some sort during the litigation, does that end it? No, because they still have a claim for a benefit. No, no, no. Let's say they settle out and they execute a waiver, give up any claim they knew of, didn't know of. At that point, he can no longer be a participant because he no longer has a claim for benefits. I mean, he can settle out his claim. To get back to the question then that asked Mr. Newton, your response to that question, when do you cease being a participant, is that you continue being a participant until you waive any and all claims for benefits. Yes, benefits from the plan, and that's the key. I mean, this is not going to be an infinite number of people because there will be certain former employees who do not have a claim from the plan. Well, I don't know why it's not true. Wouldn't it be that anybody who's ever worked there, who is eligible to get a payout from the plan, continues to be a participant until the survivor of that person dies or until they execute a waiver? No, because presumably certain former employees will have legal claims, but those aren't necessarily claims that flow from the plan. They're not claims that they're entitled to more benefits from the plan. What about every employee who's ever worked there who receives and wants some payout? No, because it's true. Presuming that that wants some payout was adequate, that it covered all the benefits that they were entitled to. Well, we'll never know because it'll depend on the subsequent claim made by somebody in the future when they think they've discovered fraud. Nobody will ever know. Well, you're saying exactly that because I've been saying exactly that. What's happened is what was in the pot. That's what the plan was about. No, I think you can segue out certain categories. For example, the defined benefit plan that we made reference to, because in that case, you receive a fixed benefit. So henceforth, if you receive that fixed benefit, any claim for fiduciary breaches. The defined contribution plan. In a defined contribution plan, there is the possibility. Now, you need to show that you have a tolerable claim, and in this case, for example, the claim has shown that because he has alleged that fiduciary breaches diminished the benefits he received and that he has yet to receive all those benefits. So there needs to be an element of tolerability even when you're in a defined contribution plan. That's because of the nature of investments. Why couldn't any person who's ever gotten a payout from a lump sum plan make an argument, even in good faith, that because of the nature of the investments that the plan made, the person should have gotten more in that lump sum than they got? You can always make that argument. I mean, I guess that's a concern, but of course, even if they bring a suit, they're going to have to succeed on the merits. Let's not get into the merits. How do you determine standing? And if it's what you and I believe your colleague, Mr. Norton, are saying, again, when does it end? When do you stop being a participant? When you no longer have a tolerable claim to benefits. So when you execute a waiver. That's the only time it ends, and when the survivor dies. I don't think that's the case because, for example, even in some of the cases that this court has analyzed, for example, Luther, I believe this court installed statutory language but then ultimately denied standing because even though there was a potential eligibility for benefits, the pleadings did not even show evidence of tolerability to those claims. So it's not that every single participant had a fine contribution. That was just the participant who didn't know how to plead the cause of action. That doesn't mean the person wasn't a participant. That was the problem with the complaint. Well, there's two parts to the definition of participant. It's both that you're a former employee and that you have a tolerable claim, as it was interpreted by Firestone, to benefits. So it's two parts. It's a claim to benefits, but it's also one that factually could occur. In this case, if the plan recovers its losses, there's nothing to believe that this plaintiff wouldn't then self-receive his benefits. I mean, it's almost automatic if the plan recovers its losses. But you're assuming the plan had losses. Pardon me? The question keeps getting asked. I've heard a reference to that. You're assuming the plan had losses. And it's those losses that you say give rise to the colorable claim. And the losses were including investments or just kind of investments that were just a little bit too cozy, investing in the wrong stock, even though there are options, and apparently the person could have opted for another kind of investment. I'm not sure that helps. Is it possible that there ought to be there, not so much that the plan had losses, but that's what the merits are, but whether there's a colorable claim that the plan had losses. Correct. I think I understand your question. That's correct. Counsel, if the intent of Congress was to cover universally anybody who could have been hurt by fiduciary fraud, wouldn't it have been very easy for the Congress in the standing section to simply say, standing exists for anyone who is or ever was a member of a plan? With all due respect, I want to correct what you're saying. We're not arguing that Congress intended to cover anybody who suffered from fiduciary fraud. I'm not attributing any argument to you. I'm trying to figure out what logically Congress would have intended, given the words they used. And I'm trying to do that by seeing what alternative words they might have used if their intent was to cover absolutely everybody who could have suffered any sort of economic harm from a fraud by the fiduciaries. So why couldn't they have just said anyone who is or ever was a member of a plan? Wouldn't that have been easy to do? But that's not what Congress's words seek to achieve. Congress's words seek to identify those who were harmed and not receiving all their benefits from the plan. And that's what the statutory language requires. But for standing, if the intent is to cover everybody who could have suffered, the easy way to do that is say all present or former members of a plan. Right? Yes, but that would be too broad because what Congress would do with that? Well, that's what you're arguing. Yes, but I think that that goes away from the statutory language because the statutory language is or who may become eligible to receive a benefit of any type from the plan. So Congress was seeking to segue between former employees and participants who no longer have a claim for something from the plan and those who are alleging, look, I didn't receive all the benefits I was entitled to under the terms of the plan. And what Congress is doing is consistent with their intent to create broad remedial broad standing because what it does is it identifies those parties that were harmed but didn't receive all the benefits they were entitled to under the plan. And that's ultimately, I think, what standing tries to do. It tries to segue out those parties that suffered harm. And, you know, I think the statutory language does that, achieves that. Where's the evidence from legislative history that Congress intended to cover everybody who suffered harm? The legislative history, I mean, I think I outlined that well in my brief. I didn't see that you did it at all. Of course, there are some broad statements in the bill itself. But in the underlying legislative history that preceded enactment of the bill, where is the evidence, for example, in a committee report or in a floor debate that they intended to cover everybody who was harmed? I'd be happy to read further, you know, on the legislative history. Well, are you aware of any? Well, I'm aware of language which this Court has quoted in Lucerne that Congress intended to construe statutory standing. No, I read the things you quoted. What I'm asking is whether there was anything else that you found in your search, assuming you made one, of the legislative history preceding the passage of the Act. Your Honor, the answer right now is no. I'm happy to read further on that. But again, I don't think we need to go to legislative history. I think it's in the statute itself. The leader may become eligible to receive a benefit of any type from the plan. And Firestone reinforces, I mean, the language used by Firestone, is a countable claim for a vested benefit. And it can be evidenced, according to the Supreme Court, by showing that one could prevail in suit for benefits or otherwise meet this requirement at some time in the future. And again, this is the situation of the plaintiff here. He was vested in his benefits and he took the roll over of his plan account. But he alleges that those vested benefits were improperly reduced and were less than what he was promised under the terms of the plan. So he has a countable claim, as the Supreme Court requires, that he will recover those additional vested benefits if the plan recovers his loss. Let me just be right there for a while. There are two things that maybe you can help us with. One is the argument that we should do away with the distinction between damages and benefits, which makes a great deal of visceral sense to me, depending on how we do that, along that way, if you can adjust this to help us out with that. And the other one is whether or not a distinction should be drawn, for purposes of summers, between a defined contribution plan and a defined benefit plan. If a distinction should be drawn, what's the nature of that distinction? Where does it come from? Yes. I think those questions actually get to the same point, which is that in summers, what the court was ultimately doing, use the language damages and benefits, but what the court was ultimately doing was distinguishing between claims that come from the plan, and that would be, for example, a defined contribution plan claim, and those that come from outside of the plan. And those would be a defined benefit plan. I'm not saying they should come from the plan, but you're not having a fiduciary bring the claim. You're having someone who's gotten the loss on payment. Yes. Well, in this particular case, the claim that this plaintiff is bringing is on behalf of the plan. It's not the claim for the benefits yet. The idea is that he ultimately will have a claim for benefits, and that will come after the plan recovers its losses. So this is not a claim for benefits you're saying? Pardon me? You're saying this is not a claim for benefits? The suit that this plaintiff has brought is not, but what gives him standing to bring it is that he ultimately has a claim for benefits from the plan. You have to decide what little money they have left. It's not a claim for benefits, but if he wins, he will then bring a claim for benefits. Yes. It's getting simpler and simpler. I have no idea what you mean by that. Okay. He sued under 502A2 on behalf of the plan to recover its losses. What are those losses? We had to label them. I know that gets a little difficult. If we hadn't put a label on that loss, what label would we have put? In the universe of labels, we only have two labels to pick from. One says damages, one says benefits. Which label do we put on that loss? I think it's probably more like damages. I don't know if that label is right because it's losses that the plan sustained. At the same time, he has— It's a claim for damages, then he gets to bring an action for benefits. Well, it's really at this point he has a claim for benefits because at some point he will recover— But you're saying he hasn't brought it yet because this is a claim for damages. First, the plan needs to recover its losses before he can— Doesn't Summers help you here?  Thank you, Your Honor. That's precisely what happened in Summers. In Summers, it was the same idea. They were former employees who had already received their lump sum distribution, but they were alleging that the fiduciary had committed breaches and that those breaches reduced the amount of benefits they received when they— But it was a claim for benefits. The plan based on Yancey and the other cases they relied upon— Well— I'm sorry. Basically, this is— The benefits that we're referring to are the benefits that they were entitled to receive. That's what defines standing. It's whether the plaintiff has an additional claim for benefits from the plan. It doesn't matter here that he's bringing his suit on behalf of the plan to recover its losses. What matters for standing is that at some point he has a claim for additional benefits. It's right in statutory language to receive— He is or may become eligible to receive a benefit of any type from the plan. I think that's the test that Summers was ultimately applying. That's what distinguishes the suits without standing that Summers described and the suits with standing that Summers described. I think that ultimately this test about damages versus benefits is a distraction. It confuses the matter. It's actually quite simple. It's whether the party has a claim for benefits from the plan. It depends on what benefits are. If benefits are something that's in his account now, you get one result. If benefits are something that exists in theory contingently based on a series of future litigation events, then you get the other result. Help us on what Congress meant by benefits. When they talked about vested benefits, tell us about the benefits part of it. I think we probably understand the vested part of it, but the benefits part of it may be more elusive than first appears. Benefits are those things you're entitled to under the plan. In a defined benefit plan, when you get your payout to set amount, that's all your benefits. You're done. In a defined contribution plan, it's everything that should be in your account. In this case, everything that should have been in the plaintiff's account was not there, he alleges, because of these judiciary breaches. He got some of his benefits, but he didn't get all of them. He didn't get, for example, But you're saying the benefits include future amounts of money if there's later some proof of some fraud. So long as it flows from the plan. Of course, of course, of course. We're not talking about extraneous events. We're talking about what happens by the plan managers, and the plan managers are fiduciaries, and they breach their fiduciary duties. That's the premise we're all working from. Well, let's say that the plan managers engage in misrepresentation, but those misrepresentations did not in any way affect the amount you were entitled to receive. Perhaps maybe they caused the plaintiff to leave the plan early. He still would have a plan against the fiduciary, but it's not the one for benefits. Even if he succeeds, he's not going to change the amount that he was ultimately entitled to. That one is easier. He has the butt fully standing, and he has an action for a breach of fiduciary duty, and that's something we've all dealt with. It's in the statute, and it's pretty clean. That's plain to find. But that doesn't get into this murky distinction if there is one between benefits and damages that might drive the standing as well. Well, okay. Let me give you another example. Let's say fiduciary is engaged. Well, actually, this example wouldn't go to what the judge is thinking, but I think it's a helpful distinction in understanding this. If we don't define standing as it is under the statute, if we don't define it to mean anyone who is or may come to have a benefit, the possibility is that we bar a case where, for example, there is fiduciary wrongdoing that affects the plan. Let's say the company goes out of business, it terminates the plan, and at that point all the participants are forced to take a distribution. You know, it's their own. If later on they learn that there was egregious fiduciary mismanagement, they will have no remedy to sue, even though that egregious fiduciary mismanagement directly diminished the amount of benefits they received from the plan that they were entitled to receive. You're denying standing to them. I think that's the danger of narrowing standing beyond what is in the statute. You have the danger of what would be the argument that Connick kind of thing is going to make, but that doesn't mean that the argument that they're making is wrong. It just means that maybe Congress left a big loophole in the statute that they need to address. Maybe that result you're arguing about is a natural result of what Congress intended at the time. Well, that could be the case, but I still think the statute is consistent with it, and I think this is the intent that Congress is going after. It's consistent with what they said is the remedial goals of EARSA to protect pensioners, all pensioners, anyone who was denied a portion of this. Let me ask you this. Why did Congress put a standing provision in here at all? If Congress was hoping and assuming that everybody who got hurt would sue, why don't they just let the minimum requirements of constitutional standing set the limit, because they can't avoid that limit, and not have a standing section? Then anybody would have standing who missed a constitutional test, which is very large. I don't think Congress's intent was to allow everybody to sue. It was to allow those people that were harmed and didn't receive the entire value of the pension that they were entitled to. Well, if somebody wasn't harmed, then, of course, there would be no point in letting them sue. So we have to assume that the people we're talking about were harmed. So then the question becomes, well, does Congress want to cover everybody who was harmed or everybody who was harmed minus some category? And that's the issue in the case, I think. Everybody who was harmed in that they didn't get all the benefits they were due under the terms of the plan. So that excludes people who got everything they were entitled to, despite the fact there may have been other fiduciary breaches. It creates a category of people who didn't receive everything they were entitled to under the terms of the plan. In this case, the plaintiff was entitled to receive everything that was in his account but was prudently invested. He was entitled to a prudently invested plan. I think what you're really saying is that for a defined contribution of plans, pardon me, for defined benefit plans, a failure to include a standing section would allow standing that shouldn't occur. So they had to have a section to exclude out the defined benefit plan people. But you're saying for the defined contribution plan people, it's wide open. There are no limits. It's odd that they didn't make the distinction in the statute. If it turns on which type of the two types of plans you're under, it's pretty odd that the standing provision didn't cite that distinction. Well, there are other scenarios besides the defined benefit versus defined contribution. I just think that's an easy one to see, and it's also what was at issue in Summers, the distinction there. And it's also the distinction in a lot of the CAFO, like having Yancey on one point, I'm sorry, Coombs on one point. That's a defined benefit plan where there's no standing. And then Summers' defined contribution plan where there properly is standing. But there are other scenarios. For example, if somehow they're already in it. Why are the Bud Ford tests even needed? Well, why did those cases they created, the Bud Ford tests, have to do so? Under your interpretation of the statute, those people would have had standing without any creation of a new judgment test. They'd have standing under your interpretation of the language vested benefit, wouldn't they? No, I think there's a category of people that are beyond statutory, the argument that I'm advocating, that fall into the Bud Ford test. I mean, the example I think I used earlier was if there were misrepresentations that caused a person to leave the plan early. Well, but that's it. That's where the person leaves the plan early. That's when, under your argument, the standing would kick in. They left early, and the Bud Ford test comes in to give them standing. I'm sorry. I must have mistaken myself. Not necessarily. I mean, if they were in a defined benefit plan and they left early, or even if they were in a defined contribution plan and they left early and there was no indication of fiduciary mismanagement, so everything that was in their account at that time was what was required to be there under the terms of the plan. But let's say if they got everything they deserved, or they got all the benefits they were entitled to, so under our test they're not going to have standing. But let's say they have a second argument that there was fiduciary misrepresentations that caused him or her to leave earlier. That's a situation where they're not going to have statutory standing, that they might be within the Bud Ford test if it were a five. Well, you guys have been on for a while. Let's go to Ms. Tarasova. Thank you for your time. Okay, question one, counsel. If I'm a present plan participant. Let me get a new one first on the record. Good morning. Good morning, everyone. I'm Robin Tarnofsky, and I represent the descendants. Good morning. If I'm a present plan participant in a defined contribution plan, can I sue for damages and have standing under this section? Yes. As a current participant, you would bring to under. For damages? For damages. How do you use the word participant? Would you say as a current participant? As someone who has an open plan account is the way I'm using participant. So under A-1 or A-2 or what? For damages, you would bring suit under A-2. If you were bringing suit, the section A-1B allows one to bring suit for payment of that benefit. In this case, in the definition under 1.127 of participant, it talks about a claim for additional benefits of any kind. Because Mr. Braden claimed that his payment from the company was deficient, the date was paid out. Isn't that a claim for additional benefits? Doesn't that state a claim for additional benefits? I don't think that it does. I don't think that it does. And I think the first point I would make is that while the statute talks about a benefit of any type, all of the case law that follows has talked about a vested benefit. And a vested benefit is defined as an accrued benefit to which one has an indisputable, irrevocable right. What he's saying is that something happened. The plan was injured. As I understand, Russell, he basically has to be the plan that's injured. And because the plan was injured, the plan is entitled to bring monies in. And had the plan not been injured, his benefit, vested or otherwise, at the time he checked out, he left, would have been higher. There's a delta there. And that is a benefit to which he was entitled when he checked out. But what the plan and what the statute defining defined contribution plan say about what the benefit is, it's the amount contributed to the plan account plus any investment gain, less any investment losses or costs. But what happens here is they're claiming because of a breach of Well, but the issue is that that's contingent. That's not a gain that the plan account has experienced. It's not something that actually happened. Yeah, we know that. But suppose I'm the fiduciary and you're the employee and you make a contribution every month. And I take half your money and put it in my pocket. And I buy stock with the other half of the money. And this happens month after month after month. The actual credit to your account is going to read at a level of 50% of what it ought to read at, right? Now, it can't be that Congress wanted to allow that to happen and you, the injured employee, not to be able to sue. Well, first of all, as a practical matter, I think that that would be something that the person who is making the contribution would pick up before cashing out of the plan. Well, but it's something they'll assume that they cashed out and then sometime in the future they'll decide to do this. To the extent that that happens, I believe that it's certainly the case that there are others who could bring suit for this injured former participant. The Department of Labor could bring that lawsuit. That lawsuit could also be brought by an innocent plan fiduciary, by somebody else. If there is another fiduciary. If there is another fiduciary, and there generally is, it's unlikely that there's only one fiduciary. I guess the point is, if you look at trust law, and I have a trust form and the trustee breaches his fiduciary duty, and I sue the trustee for causing me a loss, isn't what happens is that there is, in effect, a constructive trust set up and equitable remedy for me to go out and get that. Forget whether I'm a participant or not. I mean, just trust law. Taking your question in the context of the question asked by Judge Michel, I guess I would say that there would be invested benefit in that context because amounts had been contributed to the plan account that was then inappropriately taken out. So whether or not the participant that the employee had cashed out of the plan or not, he would still be a participant in that he would still, in that instance, have a claim for vested benefits because what a vested benefit is, is the amount he contributed plus gains minus losses. There was a case that came out in the Reviews of Cases, K-A-Y-E-S, which said that if you are cashed, this was under another provision, which I guess was 1132A9, I believe. If you weren't cashed out, you don't have standing in that particular context. And almost immediately thereafter, Congress came in and overruled that. It seems as if Congress is saying that the policy behind all of this is to make sure that employees are covered and that they get what they are due. If when they leave, they don't get all that they are due and it comes in later on, they shouldn't be covered. At least that's the analog that I see coming out of what Congress did in response to the K-A-Y-E-S case. How do you respond to that? The way I respond to that is that I actually take the action by Congress in the situation of Section 502A9 to support the opposite outcome, that is that it is the role of this Court to interpret the statute as it's written. Congress drafted it with a highly articulated statute. It reflects numerous policy compromises that are embodied in the language of the text. And that is necessarily, or that may result in instances  The reason there's so many differing views is because we're not sure how it's written. The statute says that someone is or may become eligible for benefits. And this is a may become eligible for benefits. And then you look at Firestone, and the question is, do you have a tolerable claim that you currently are eligible for benefits? In this point, whether he wins or loses on the merits, it seems, one could make a good argument, that Mr. Gray, he does have a tolerable claim that he didn't get all he was entitled to when he left. And the issue then becomes whether or not he's going after benefits or damages, which kind of goes back to where we were before. But isn't what Jim Ross said right? I think that there are a couple of responses. The first is that the type of claim he's bringing, claim for breach of fiduciary duty, is classically one for damages, not benefits. This court in Daniels said as much. I think this is pretty important. What did we say in Daniels? In Daniels, We talked about beneficiary there. We talked about beneficiary. And I was on the panel with Daniels, and I really thought that we covered it pretty clearly. But what do you read in Daniels that goes your way? Well, what Daniels said that I think goes the way of the defendant, is that a claim for a breach of fiduciary duty is one for damages. Now, the court does go on to say, and I don't want to in any way suggest otherwise, that it didn't reach a specific issue of whether that particular claim kind of had standing under Section 378, the beneficiary definition, which is exactly analogous to the participant definition because the plaintiff, the defendant there, hadn't challenged it. But then the issue was whether or not they were a participant for purposes of getting plaintiff documents. Isn't that different than whether or not the person is a participant for purposes of damages-slash-benefits? I don't think it is because there's no indication in the statute that participants have different meanings in those two different contexts. And getting back to Judge Ambrose's earlier question, if Congress does not like the application, but the balance is struck, but the language is written, Congress does not act as it did in response to the case case when it adopted ERISA Section 502A9. Let me ask you about options that Mr. Norton may have had on behalf of his client. Could he have sued in state court if he's outside ERISA standing, outside ERISA protections, as you say he is? He may have been able to. Certainly, I don't know what... Well, what about the preemption provisions of ERISA, which seem to preempt any state remedies dealing with the employee benefit plan? Well, Curtis in the Ninth Circuit said that where there is not ERISA standing, the person who is denied ERISA standing because they don't have standing under ERISA may have to state what causes of action that aren't preempted by ERISA. How can that be if the reach of preemption goes to everything dealing with employee benefit plans? Any relief for tinkering with employee benefit plans? I think that's a difficult question. I think the... Do you agree that the preemption contours cover all forms of relief for thievery from employee benefit plans? I'm not sure of the answer to that. I would be happy to brief him further, but I'm not sure of the answer to that. I'm not sure what state law... That is a wonderful answer. I cannot tell you in a refresher to get an answer to that. I'm not sure about a reasonable way to get... That is a wonderful answer. Thank you. There were a few questions you've asked that have gotten answered from either side. Thanks. If someone... I'm going to then... Then I concur. If someone, other than Graydon, brings a suit on behalf of the plan and wins, presumably the plan then has a recovery, correct? If there was a win, yes. Of course, we think that that should be the case, but we're not going to put it on that list. I don't want to concede anything, but assume for the moment that the person... They win on behalf of the plan. They bring it derivatively. The plan wins. Would that not include losses that Graydon suffered if the plan were to win? I believe that would include losses that were attributable to connected stock that had been at the time held in Mr. Graydon's account. I think that, unfortunately for Mr. Graydon, he would not be entitled to any part of that distribution, although... Because? Because he cast out of the plan. He's already cast out of the plan. The employees who cast out of the plan because they were conned by the plan operators to leave under some false set of facts. Those people, by various court decisions, have effectively been restored to their status as current members of a plan. Why couldn't we do the same thing with Mr. Graydon? The but-for exception to non-participant plan standing is a limited one, and it exists only in the context where someone is conned out of becoming or remaining a plan participant. There's no case law, as far as I'm aware, that suggests that somebody who is a participant at a time of an alleged harm to a plan who casts out is then restored to plan status if there's actual proof that the alleged harm actually occurred. And the problem with that as a policy matter and as a legal matter is that we really start getting into the once a participant, always a participant argument. We don't need to get into that. The other side has not raised that. You don't need to strike down straw men. We're having enough trouble with the real men. Well, but I don't think it is a straw man because I think that the necessary implication about holding that someone who casts out of the plan for reasons that are not alleged to have anything to do with plan conduct is somehow restored to plan status is restored to plan status means that someone who is a participant and casts out is always going to be a participant because there's always going to be a possibility that someone's going to come up with some kind of claim that's been recently discovered. But is my point of standing against a person against that colorable claim that you are or may become eligible? He has, again, whether he wins or loses on the merits, I don't know, but doesn't he at least have a colorable claim that in my hypothetical if the plan wins and there's something allocable to his account that he didn't get that he should be able to get it, that at least it seems to be the policy of Congress that we're... I can't think back Russell Wally, but it would seem to be that this is what was intended, to set up plans for employees and to give them as many benefits as were promised to them when they got into the plan. I think that there are two responses to that. The first is that what Firestone says is that you need to have a colorable claim to vested benefits. And I think a lot of the discussion here is reading vested right out of that test. No, there's no dispute about vested in this case. He was vested in the benefits every single day he was in the plan, and if he was cheated, he's still vested. Well, he was vested in the benefits that were actually in the account, in benefits that had actually accrued. I really don't think that he could be vested in benefits that might have been earned in a fortunate situation. If you're saying that we can't look beyond the actual balance that the fiduciaries wrote in the records of his account, then fraud could be at the level of 100%, and there would be no standing. There's no fiduciary option, actually. I'm sorry, I didn't mean to interrupt. That's fine, I'm getting the checkpoint. If you're right, then there's no breach of fiduciary duty in that situation because the person's vested in whatever's in that pot, and they've gotten swindled out of a lot of stuff that should be in the pot. There's no risk in your analysis to have no claim. Well, I think that it depends on the nature of the swindle that we're talking about. To the extent that someone contributed money and then taken out of the account in an inappropriate and unlawful way, that falls within the rubric of vested benefits because vested benefits, remember, are benefits that are contributed plus investment losses minus investment gains in cost. So if the nature of the swindle is someone, an employee, puts money into that plan, he takes it out and puts it in his pocket, in that circumstance, even if the employee cashes out, I think it's the case that the employee still has standing to claim because he has a colorable thing to a vested benefit because once he puts that money into the plan, absent investment gains or losses, or plan costs being allocated to his account, he's asking for an amount. He has a vested benefit. Am I right that you're telling us we can't look beyond the credits actually recorded in the account of Mr. Graydon? Plus actual investment gains plus actual investment losses. That's the same thing. That's what the number will be, that he has 106.5 shares in his account. You're saying we can't look beyond that even if there's reason to believe that that number is fraudulent? If it's the case that the employee's actual contribution plus actual investment gains minus investment losses and costs is what you're referring to as the credit in the particular employee's account, that's what you have to look at. That's what you have to look at because that's a vested benefit. On a Firestone 7, you need to have a colorable claim to a vested benefit. You don't have a colorable claim to a benefit that might, under other circumstances, have been earned. Or if you do have a colorable claim to an amount that otherwise might have been earned, then the colorable claim may be to something, but it's not a colorable claim to a vested benefit. Why not? Because ERISA defines a vested as the amount contributed to the plan less costs and losses plus investment gains. Vested benefits in this court held in a DG O'Connell case in another context is the accrued benefit that the person putting the money in. What you say there is correct, but isn't the entire purpose of the statute, the reason it was enacted, is to counteract fiduciary fraud? I have a couple of responses to that. The first is that I don't think that a holding affirming the district court's decision here is going to mean that fiduciary fraud is going to go unpunished. The question was whether the purpose of the act was to counteract fiduciary fraud. I would say one of the purposes of ERISA is certainly to counteract fiduciary fraud, but I don't believe that a holding affirming the district court's decision in any way is inconsistent with or fails to advance the goal of counteracting fiduciary fraud because there are so many other people, individuals, entities, that could police fiduciary fraud in this instance and in others. Connexent is a going to firm, it's a company, it has employees, it has employees who are plan participants, and it has former employees who maintain plan accounts, all of whom could bring suit in addition to an innocent fiduciary participant. Who is sharing the award? If Graydon doesn't have standing, a current employee brings suit, the plan is fattened up with the recovery of the suit, and then Graydon comes forward and says, I want my share of him, I assume that the company would say, you already got your benefits under this plan, you're not entitled to any of the new money that came out of the lawsuit, right? I believe that that's right. Yes, I believe that that's right, and then who is going to get the money? Who's going to get the money is going to be allocated by a fiduciary to current plan participants. Is there some potential unfairness there? Yes, yes there is, and that's unfortunate, but ERISA is not drafted in a way that is entirely fair to everyone. Do you think that's what Congress intended? I do think that that's what Congress intended in this instance, and the reason is that there's a real issue, and the legislative history indicates a real concern with Congress when it looked at and enacted ERISA, with the issue of increasing plan costs in a way that might discourage companies from offering or maintaining plans, and a holding that somebody who leaves the plan can then become a participant again, after the buck four situation, or after the situation where a man who contributed was stolen out of his account. There's once a participant, always a participant problem that courts have rejected repeatedly, and it's not like he can be a participant just for this purpose, just for the purpose of bringing suit under 502A2 or 502A1B. I don't see any principle reason why he's not a participant for all purposes. There have been obligations, fiduciary obligations, notice obligations, disclosure obligations, on behalf of the plan, all that could increase costs on the plan. Why would that be so? If I was in the plan, I cashed out, nothing happens for 10 years, and then I discover fraud and I try to file suit and assert standing, in the intervening 10 years no one would expect the company to be treating me like an active member and sending me annual reports and whatever the other requirements are, so I don't see where all the big costs come from, because until the fraud is discovered there's not going to be any costs. Well, I would say that as an abundance of caution, the companies would need to continue sending these materials to former plan participants because they don't know at what point they might, again, become participants, and moreover, it's going to be difficult for the former participants to know that there might have been a fraud possibly absent commission of all these materials. I doubt that the fiduciaries are going to send reports to the beneficiaries indicating that they, the fiduciaries, have committed a fraud that they want the beneficiaries to know about, so it's not plausible that the report is going to contain the newly discovered evidence of the fraud. Well, I still think the point that out of an abundance of caution that plan fiduciaries, not knowing whether someone may at some point become a participant, has to continue making these disclosure requirements to the participants, which would increase the costs. Those costs would be borne by the people who are current accounts, right, because they're the only ones whose accounts can be used to defray plan fraud, and so that's, in a certain sense, unequal, right? You have people who are cashed out who are getting a benefit, even though the cost of that benefit is not being allocated to them because they don't have accounts anymore. And I think the other policy point to make is that, you know, this is a complicated statute. It reflects lots of compromises. That's not helpful unless you can point to a particular compromise shown in the legislative history that meets Graydon's circumstance. It's a generality to talk about lots of compromises. That's like the other side is a generality talks about this is a pro-employee statute. Well, yeah, but that doesn't answer the question before the court, and neither does your generalization. Well, but I actually think that it does in that I don't think that the statutory language, as interpreted by Firestone and its progeny, gives the plaintiff, Graydon, a statutory standing to bring suit in this context. And I said the statute was drafted. If Congress wants a different outcome, Congress can re-draft the statute as it did in connection with CASE and 502A9. Let me ask a question. Mr. Tarasovsky, I think we are going to stay here and we have your brief. We did let you go for a little bit, but I think we had to at first because we decided we actually wanted to. Thank you very much for your time. And, Mr. Norton, I think we have a couple minutes. Thank you. I'd like to address that. I think one of the court's chief concerns is that there's no limit to how long this person will be a participant. But there are limits. And as for any injury in law, there is a statute of limitations, which stops someone's ability to recover. There's also lost causation. There's a jury issue. Yes, that limitation is in there. That could be after he's dead, 15, 20 years into the survivorship. And that can get dragged out quite a while. But there's no statute of limitations. It's going to be the same for a current employee, a former employee still with assets in the plan. The term employee in the plan is not a problem because the person is currently in the plan. That's different than someone who cashes out this 15, 20 years. Then dies. The interest goes to the survivor. 10, 15 years later, something surfaces, which arguably is fraud. Unless there's some concealment on the part of whoever did the fraud to get equity controlling the statute of limitations. There just seems to be a problem with that. I'm not sure the statute of limitations may be an answer in many circumstances. I'm not sure it's the kind of answer that makes the problem go away. I don't know. Well, what's the difference? The distinction would be the difference because a current employee under the plan would have the same memory for 15, 20, 100 years and their beneficiaries. A former employee who still has one asset in the plan for perpetuity. The distinction would be that difference. If Congress wanted to cut it off, they would have. That's why there's other protections in the law. I consider it a law of causation. But to say Mr. Graydon loses his claim after X amount of time but a current employee covered under the plan wouldn't, they're in the exact same position. The relationship to the plan is different. In one situation, the person is taking their money in an attempt to go on. In the other situation, the person has their money, still has the plan, they haven't taken it and withdrawn it. That's very difficult. We do have to go over on your being part of the argument. We need a little bit more rigid on the result. We do have your argument in the brief. Thank you very much. Thank you very much. Thank you very much. The next matter is around Mrs. Rutgers.